UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES LAWSON, INDIVIDUALLY
MANAGING MEMBER OF LGS GROUP,
LLC, A RESIDENT OF THE STATE OF
RHODE ISLAND,

    Plaintiff,

v.                                                                            C.A. No. 10-326 ML

LAW OFFICE OF SHAWN WHITTAKER,
PC T/A WHITTAKER & ASSOCIATES,
PC, SHAWN WHITTAKER
INDIVIDUALLY,

    Defendants,

## MEMORANDUM AND ORDER

The Plaintiff, a Rhode Island resident, hired the Defendant law firm, based in Maryland, to represent his Rhode Island company in several legal matters pending in Maryland and Virginia. Plaintiff subsequently filed his complaint in the Superior Court for Providence and Bristol Counties on July 14, 2010. Plaintiff alleged fourteen counts of Fraudulent Billing Practices and Unjust Enrichment as well as one count of Fraudulent Representation Regarding an Escrow Agreement and one count of Fraud and Damage. The case was properly removed to the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1441 and the original jurisdiction conferred upon the Court by 28 U.S.C. § 1332. Defendants have now filed a Motion to Dismiss for Lack of Personal Jurisdiction in accordance with Fed. R. Civ. P. 12(b)(2).

1

## I. Facts

James Lawson ("Plaintiff"), a resident of Rhode Island, is the managing member of LGS Group, LLC ("LGS"), which has its principal place of business in Rhode Island. LGS was in need of legal services for matters in Maryland and Virginia. In March 2007, Plaintiff contacted the law firm of Emalfarb, Swan, and Bain ("ESB") after having viewed their website. Shawn Whittaker ("Whittaker"), an attorney located in Maryland and affiliated with ESB, then contacted Plaintiff via telephone regarding possible representation of LGS. Plaintiff thereafter retained Whittaker's services and that of his firm, Whittaker & Associates, PC (collectively "Defendants"), to represent LGS in the Maryland and Virginia matters.

Defendants represented Plaintiff for over two years. During that time, Defendants did not represent Plaintiff in any Rhode Island legal matters. All of the work was done outside Rhode Island and involved the matters pending in Maryland and Virginia. Whittaker came to Rhode Island on only two occasions to defend the depositions of Plaintiff and LGS employees. Over the course of the representation, Defendants communicated with Plaintiff via emails and faxes sent from Maryland to Rhode Island. Defendants also billed Plaintiff out of the Maryland office. In addition, Defendants maintained a website in connection with the law practice that was accessible in Rhode Island. When the relationship broke down over billing practices, Plaintiff initiated legal action against Defendants in Rhode Island.

## II. Standard of Review

"The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st

Cir. 2002). When "[f]aced with a motion to dismiss for lack of personal jurisdiction, a district court 'may choose from among several methods for determining whether the plaintiff has met [his] burden.'" Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Daynard, 290 F.3d at 50-51). Where, as here, there are no "conflicting versions of the facts" requiring an evidentiary hearing, the "prima facie" standard is appropriate. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

The prima facie standard requires the "district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674 (1st Cir. 1992). "[P]laintiff must make the showing as to every fact required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution.'" Id. (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990)). The Court will "draw the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

### III. Discussion

The prima facie standard is used here because the parties agree upon the essential facts on which the jurisdictional issue turns. In order to survive the motion to dismiss, Plaintiff must show facts that, if taken as true, would support a finding of personal jurisdiction. Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, has consistently been held to be "coextensive with the outermost limits of the Due Process Clause." Donatelli v. National Hockey League, 893 F.2d

459, 461 (1st Cir. 1990) (citing Conn v. ITT Aetna Finance Co., 252 A.2d 184, 186 (R.I. 1969)). Accordingly, in making a prima facie showing, Plaintiff must demonstrate that personal jurisdiction over Defendants comports with Due Process.

The Fourteenth Amendment's Due Process clause demands that a non-resident defendant have certain minimum contacts with the forum. See Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007). These contacts come in two forms. "Personal jurisdiction may be either general or specific." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)). "Specific jurisdiction may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). In contrast, general jurisdiction extends to "all matters, even those that are unrelated to the defendant's contacts with the forum[,]" provided that the defendant's contacts with the forum are continuous and systematic. See Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

A. General Jurisdiction

Plaintiff has not met his burden of making a prima facie showing of general jurisdiction. "To permit the exercise of general jurisdiction, the defendant must 'engage in the continuous and systematic pursuit of general business activities in the forum state.'" Cossaboon, 600 F.3d at 32 (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 448 (1952)). Due Process requires that "(1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the

4

circumstances." Cossaboon, 600 F.3d at 32 (citing Harlow, 432 F.3d at 57).

As to the sufficiency of the contacts, Defendants' contacts with Rhode Island were peripheral to the work performed in Maryland and Virginia. Whittaker represented LGS for more than two years but visited Rhode Island only twice in order to defend depositions of Plaintiff and LGS employees. Aff. of James Lawson ¶ 17.[1] The parties communicated through more than 1,500 emails sent between Rhode Island and Maryland. Pl.'s Opp'n to Mot. to Dismiss 17. Plaintiff maintains that these emails and the two visits, in addition to telephone calls, mailings, and facsimiles from Defendants' office in Maryland to Plaintiff and LGS in Rhode Island, demonstrate continuous and systematic contact with Rhode Island. Pl.'s Opp'n to Mot. to Dismiss 12.

Defendants' primary contacts with Rhode Island involved correspondence directed to parties in the State. The quantity of that correspondence does not overcome the fact that the subject of the calls and emails was the ongoing legal representation in Maryland and Virginia. Whittaker does not live or work in Rhode Island and he is not licensed to practice law in the State. Defendants' principal place of business is in Maryland, Whittaker represented Plaintiff and LGS in Maryland, and the billings at issue originated in Maryland. The fact that Plaintiff is a resident of Rhode Island and received Defendants' bills in Rhode Island does not establish the requisite contacts with the State.

In the second step of analysis, Plaintiff must establish that Defendants' contacts were "purposeful." See Cossaboon, 600 F.3d at 32. Here, Defendants have not purposefully availed

---

[1] Plaintiff's affidavit states that only a single visit occurred but Defendant's Affidavit in Support of Motion to Dismiss states that Defendants visited Rhode Island twice in order to defend depositions. Defs.' Aff. in Supp. of Mot. to Dismiss ¶ 9.

themselves of the privilege of conducting business in Rhode Island. "This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001). Plaintiff argues that Defendants' web-related advertisements establish the necessary contacts and constitute purposeful availment.

The websites at issue do not establish purposeful availment. "[W]here defendant's only activities consist of advertising . . . fairness will not permit a state to assume jurisdiction." Cossaboon, 600 F.3d at 33-34 (quoting Harlow, 432 F.3d at 66). ESB and Whittaker maintained websites advertising their legal services, yet, although Plaintiff initially contacted ESB and Whittaker through one of the websites, the mere fact that a primarily informational website is accessible in the forum state does not mean that a defendant purposefully availed himself of the opportunities and privileges of doing business there. See Cossaboon, 600 F.3d at 35.

Due process requires that the exercise of personal jurisdiction be reasonable under the circumstances. See id. at 33. The reasonableness factors include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Harlow, 432 F.3d at 67 (citing United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

In this instance, the reasonableness factors do not alter the outcome in favor of Plaintiff. As to the first factor, the Defendants' place of business is in Maryland and that is where both

6

witnesses and records are located. Even if this does not rise to the level of an unusual hardship, it tips slightly in favor of Defendants given the geographic constraints of this Court's subpoena power under Fed. R. Civ. P. 45. For the second factor, Rhode Island's interest in protecting its citizens from fraudulent billing practices is diminished to some extent by the fact that all of the alleged conduct occurred out of state. With respect to the third factor, Plaintiff's undeniable interest in conveniently litigating in his home state is significant but this single factor alone does not overcome Plaintiff's failure to make a sufficient showing under the first two prongs of the analysis. As to the fourth reasonableness factor, in this instance, effective and convenient resolution of the controversy is best had in the forum in which the alleged fraudulent billing practices occurred. Finally, under the last factor, no substantive policy issue weighs in favor of litigating the dispute in Rhode Island.

Defendants' contacts with Rhode Island resemble the kind of "random, fortuitous, or attenuated contacts" that do not support a finding of general jurisdiction. Cossaboon, 600 F.3d at 33 (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). Accordingly, Plaintiff has failed to establish facts that would support a finding of general jurisdiction.

B. Specific Jurisdiction

"When general jurisdiction is lacking, the lens of judicial inquiry narrows to focus on specific jurisdiction." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995). A three-part inquiry determines the applicability of specific jurisdiction. See United Elec., Radio, 960 F.2d at 1089. First, the underlying claim "must directly arise out of, or relate to, the defendant's forum-state activities." Id. Second, "the defendant's in-state contacts must

represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking [its] benefits and protections." Id. "Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." Id.

First, Plaintiff must demonstrate that his claims relate to or arise from Defendants' contacts with Rhode Island. See Adams v. Adams, 601, F.3d 1, 5 (1st Cir. 2010). Plaintiff has alleged numerous counts of fraudulent billing practices. Plaintiff argues that because he was billed in Rhode Island his cause of action necessarily arises out of contacts with Rhode Island. The alleged fraudulent billing practices, however, relate to and arise from conduct that occurred in Maryland. The billings originated in Maryland and relate to work performed there. Plaintiff's claim, therefore, does not arise from or relate to contacts with Rhode Island.

The second element of the analysis focuses upon whether the defendant has purposefully availed himself of the privilege of conducting business in the state. See Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). The cornerstones of purposeful availment are foreseeability and voluntariness. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). As to voluntariness, "[t]he mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required." Sawtelle, 70 F.3d at 1392. In addition, the commercial websites maintained by Defendants do not support personal jurisdiction because they do not involve affirmative efforts to promote business in Rhode Island and they do not directly target the State. See Sawtelle, 70 F.3d at 1393.

Foreseeability exists where "a non-resident defendant . . . has established a continuing obligation between itself and the forum state." Id. (citing Burger King, 471 U.S. at 476).

Defendants did a significant amount of work for Plaintiff and LGS. None of this work, however, occurred in Rhode Island and none of the matters involved the laws of Rhode Island. Accordingly, it was not foreseeable that Defendants would be haled into court there.

The third element of a specific jurisdiction analysis weighs several reasonableness factors. The five reasonableness factors are the same as in the general jurisdiction analysis. See Sawtelle, 70 F.3d at 1394 (applying the Gestalt factors to the reasonableness prong of a specific jurisdiction analysis). The "failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness." Id. Accordingly, while not required, the prior reasonableness analysis used to determine general jurisdiction is incorporated here and, for the same reasons as before, fails to alter the analysis in Plaintiff's favor.

## IV. Conclusion

Plaintiff has not shown sufficient facts demonstrating that Defendants are subject to either general jurisdiction or specific jurisdiction. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED and the action is dismissed.


SO ORDERED

*Mary M. Lisi*
Mary M. Lisi
United States District Judge
November 3, 2010